W. C. PEACOCK *vs.* J. H. LOVEJOY *et al.*

WRIT OF ERROR TO POLICE COURT, HONOLULU.

OCTOBER TERM, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

A Writ of Error lies from the Supreme Court to Police Courts. *Kalakaua vs. Harris*, 3 Hawn., 27, reversed.

A writ of error brings up only errors of law which appear on the record; an appeal may consider errors of fact as well as of law.

Voluntary bankruptcy of lessee is not a breach of covenant not to assign without consent of lessor.

Decision of Police Court affirmed.

OPINION OF THE COURT, BY AUSTIN, J.

THIS case comes here on writ of error from the Police Court.

The action was brought to recover summary possession of land leased by the landlord, upon ground of a forfeiture by the tenant for breach of a covenant in the lease not to assign without the written consent of the landlord. The lessee, without such consent, filed a petition in bankruptcy and is now bankrupt and the defendants are his assignees. The Court below held such act was not a breach of the covenant referred to, and gave judgment for the defendants. The plaintiff failed to appeal in time as allowed by the statute, and subsequently was allowed this writ of error. The counsel for defendants moved that the writ be quashed.

The first question presented, therefore, is whether a writ of error will lie in the case. The defendants' counsel claims that the law is *stare decisis* in his favor, in the case of *D. Kalakaua et al. vs. C. C. Harris*, 3 Hawaiian, 27. That decision was made in 1867, and has not, that we are aware of, been questioned since. The plaintiff's counsel clai ns that the decision was an error and should now be reconsidered and reversed. As has been announced lately by this Court, such a reversal should be made with extreme caution, and only where on reconsideration it seems manifest that a

mistake or error occurred. With this principle in view we have examined with care the decision made.

By Sections 1157 to 1160, inclusive, of the Civil Code, a writ of error may issue from any Justice of the Supreme Court to the Police Justices within six months after entry of judgment, if the execution thereon has not been fully satisfied. By Sec. 948 of the Civil Code an appeal in twenty-four hours may be taken from a judgment in summary proceedings in the lower Court to a Circuit Judge or to the Supreme Court. By Sec. 1006 of the Civil Code any party may appeal in any case from the decision of a Police Justice to the Circuit Court or to the Supreme Court within ten days after decision rendered. These separate sections were passed simultaneously in the Civil Code of 1859.

In 1874 the office of Circuit Judge of Oahu was abolished, and a Judge of the Supreme Court, as the Intermediary Court, was assigned to perform some of the duties of the former Circuit Judge and Court. But the remedies for errors of judgments of Police Courts remain now what they were in 1859.

The appeal from a judgment in summary proceedings would doubtless be governed by Sec. 948, because specially mentioned therein. Sec. 1006 would not apply to that case; but with this exception the different sections may well stand together. It is impossible to say that either section abrogates or repeals the other.

A writ of error brings up only errors of law which appear upon the record sent up and must be granted before execution is collected, while an appeal may consider errors of fact as well as of law. The writ gives time to discover errors of law which the hurry incident to an appeal may have caused to be overlooked The different remedies seem wise and consistent.

On looking at the case in 3d Hawaiian we find the only case cited in the opinion to be *Savage vs. Gulliver*, 4 Mass., 177. That case was one where a writ of error to the Supreme Court from the judgment of a Justice of the Peace was quashed because an appeal was allowed by the statute of 1783 to the Court of Common Pleas. At the time this statute was passed the right to a writ of error existed, and Chief Justice Parsons held that "the statute in giving an appeal has, in our opinion, taken away by a reasonable implication the remedy by error, unless in cases where the aggrieved

party, without any *laches* on his part, could not avail himself of an appeal."

Manifestly this case is not in point to sustain the decision in the 3d Hawaiian. With deference, we think the Court overlooked the distinction between the two cases, and committed an error which it is our duty now to correct, and we therefore sustain the issuing of the writ.

This conclusion brings us to the question on the merits whether a voluntary petition in bankruptcy, by the lessee in a lease without consent of the lessor, is a breach of the covenant by the lessee not to assign without consent of the lessor.

By Sec. 962 of the Civil Code every person owing honest debts to the amount of $1,000 finding himself insolvent may, under oath before a Justice of the Supreme Court, declare himself a bankrupt. Assignees are appointed by the choice of the creditors, and thereafter, by Sec. 974, the Justice shall direct the Marshal to assign all the bankrupt's property to the assignees.

The plaintiff's counsel admits, and the authorities are undisputed, that the involuntary bankruptcy of such a lessee would be no breach of the covenant not to assign ; but he claims that by a voluntary petition the lessee in this case has caused the assignment to be made and thereby his lease is subject to forfeiture. If this be so, then the remedy of an honest debtor who holds such a lease, to declare himself a bankrupt, and thereby try to be just to all his creditors, is cut off, except at the expense of losing to them and to himself a lease, which may, as claimed in this case, be the most valuable asset he has for the payment of his debts. This seems unreasonable.

Literally, the execution of such an assignment in involuntary as well as in voluntary bankruptcy, if considered the act of the bankrupt, is a breach of the covenant which says no assignment shall be made. The covenant makes no exception for any cause. But the law, for the protection of creditors, has long held that involuntary bankruptcy was not a cause of forfeiture. The holding in voluntary bankruptcy is not so undisputed, but we think it is sufficiently clear.

In *Bemis vs. Wilder*, 100 Mass., 446, the defendant, in Decem-

ber, 1866, filed his voluntary petition for the benefit of the insolvent laws, and thereafter his property was assigned by the Judge of insolvency to a chosen assignee.   The Court said that "it is well settled that an assignment, by operation of law, passes the estate, discharged of the covenant, to the assignee; and this would seem to be so, where the transfer arises from voluntary proceedings in insolvency, as distinguished from proceedings *in invitum*, and where there is no indication that the proceedings are colorable merely for the purpose of affecting the transfer in fraud of the lessor."   This case is exactly in point.   See also *Smith vs. Putnam*, 3 Pick., 220; *Doe vs. Carter*, 8 T. R., 57; *Jackson vs. Corliss*, 7 Johns., 530.   In these last two cases judgments were confessed, but not fraudulently, and executions thereon issued upon which the leases were sold.

See Taylor's Landlord and Tenant, Sec. 408.   *Doe vs. Powell*, 5 B. & C., 308.

The plaintiff relies on *Shee vs. Hale*, 13 Vesey, 404.   It is not in point, for the Court there held, that the intention of the testator to make the annuity, sought to be forfeited to creditors, personal to his son, who assigned in insolvency, was undoubted, and so there was a forfeiture.

It is undisputed that a landlord may prevent the operation of the rule herein applied by stipulating that the lease shall not so pass.   See Taylor's Landlord and Tenant, Sec. 409.   *Shee vs. Hale*, and note.

The case of *Holland vs. Cole*, Hurlst. & C., 67, goes nearest to sustaining the plaintiffs' position, but in important respects may, we think, be distinguished from the case at bar.   The lessee in that case executed a voluntary deed of assignment for the benefit of his creditors, under the new Bankruptcy Act of 1861.   Pollock, C. B., says that formerly such an assignment was an act of bankruptcy and void, and so the lease was not assigned; citing the case from 5 B. & C., above cited; but that now, by the new act, such an assignment, if certain conditions were fulfilled, would be valid, and he holds the assignment to be voluntary, and to work a forfeiture, those conditions having been complied with. One of these conditions was that three-quarters in value of the creditors, whose debts amount to £10 or upwards, should consent.

So, whether the assignment would stand or not was uncertain. If the conditions were not complied with, the assignment would be void.   It was, in effect, allowing the bankrupt, if consented to, to select his own assignees.

Our statute, Sec. 978, provides that every assignment by an insolvent, or one having committed an act of bankruptcy, except upon a good consideration, to a *bona fide* purchaser having no reasonable cause to believe him to be insolvent or bankrupt, shall be void.   If, under this condition, an assignment should stand, because taken for value in good faith, doubtless the clause allowing forfeiture would apply.   But no such assignment was made, nor was any assignment directly made in this case, and if made by implication it was void.   We think the case of *Holland vs. Cole* not against our conclusion, but in so far as it may seem to be so, we believe it to be error.

For these reasons the lease was not forfeited, and the judgment of the Police Court must be affirmed.

*F. M. Hatch*, for plaintiff.

*E. Preston*, for defendant.

Honolulu, November 21, 1884.