44 Haw. 31 (1959)
352 P.2d 616
IN THE MATTER OF THE PETITION OF EDWARD J. CARVELO, INVOKING SUPERVISORY POWER TO REMEDY MANIFEST INJUSTICE OF CONVICTION AND IMPRISONMENT.
No. 4138.
Supreme Court of Hawaii.
December 7, 1959.
TSUKIYAMA, C.J., MARUMOTO, CASSIDY, WIRTZ, JJ., AND CIRCUIT JUDGE HEWITT IN PLACE OF LEWIS, J., DISQUALIFIED.
*33 Louis Le Baron for the petitioner.
Lincoln J. Ishida, Deputy Prosecuting Attorney, City and County of Honolulu, for the State.
OPINION OF THE COURT BY MARUMOTO, J.
Edward J.
Carvelo, petitioner, is a prisoner confined in Oahu Prison under a sentence imposed on him by the circuit court of the first circuit upon his conviction for burglary in the first degree. He was jointly indicted with Richard Kahalewai, Franklin Jackson and Richard Gushikuma, all of whom were convicted of the same crime. In this proceeding, he asks that this court afford him relief by exercising its supervisory power under R.L.H. 1955, § 214-3. Specifically, he asks that this court grant him leave to appeal by way of writ of error despite the expiration of the statutory time to appeal his conviction.
This proceeding is another manifestation of the growing consciousness on the part of indigent defendants of their post-conviction rights following Griffin v. Illinois, 351 U.S. 12.
Petitioner is represented in this court by Louis Le Baron, former associate justice, who has volunteered his services. Petitioner's defense at the trial was conducted by Larry Kuriyama, a licensed attorney, under an assignment by the circuit court pursuant to R.L.H. 1955, § 253-5.
*34 Although this is an original proceeding, we shall refer to petitioner's counsel in this court as "appellate counsel" to distinguish him from petitioner's counsel at the trial, who will be referred to as "assigned counsel." The word "defendant" will be used to mean any indigent defendant in a criminal case, and the word "counsel," used alone and without any qualification, will have reference to any member of the bar assigned under § 253-5. Also, under our procedure, there is no appeal as such in a criminal case, and appellate review of conviction may be obtained only by bill of exceptions or writ of error. However, we shall use the word "appeal" to mean appellate review by writ of error, for such obviously is the sense in which appellate counsel has used it in the briefs filed on petitioner's behalf and at the oral argument.
Petitioner alleges that he was indicted for burglary in the first degree on April 4, 1957, and was arraigned on the following day, at which time he entered a plea of not guilty and requested assignment of counsel; that the court appointed assigned counsel to defend him upon a showing of indigency; that assigned counsel defended him at the trial which began on April 20, 1957, and ended four days later, when the jury returned a verdict of guilty as charged; that assigned counsel duly noted an exception to the verdict; that on July 1, 1957, he was sentenced to imprisonment in Oahu Prison for a term not to exceed 20 years; that, "believing that the Territory of Hawaii at his trial had not proved the corpus delicti by a scintilla of evidence but had him convicted by perjured testimony with respect to other crimes and that he had a meritorious appeal," he, immediately after the verdict and sentence and repeatedly for more than five months thereafter, requested, instructed and demanded assigned counsel to take an appeal; that he relied upon assigned counsel to carry out his request, and was frustrated from otherwise protecting his interest on *35 appeal because he was destitute and was incarcerated without the means, ability or freedom to act for himself; and that assigned counsel, after noting an exception to the verdict, failed to take an appeal, presumably without notice to the court, and permitted the time for the taking of appeal to expire, although the court allowed him a fee of $250, being the "full remuneration for all services in the circuit and supreme courts performed for the accused person in regard to the offense charged" under § 253-5. The allegations are uncontradicted and we assume them to be true for the purpose of this proceeding.
Appellate counsel urges upon this court that petitioner is entitled to the relief that he seeks because (a) defendant has a statutory right to appellate review of his conviction, (b) counsel has the duty of taking defendant's appeal whenever he is so requested although he may be of the opinion that the appeal is frivolous, and (c) defendant's loss of statutory right of appeal by counsel's failure to take timely appeal presents a proper case for the exercise of the supervisory power. Such contention requires a consideration of the statutory provisions governing appellate review of convictions and appeals in forma pauperis.
Under R.L.H. 1955, §§ 212-1 and 212-5, writ of error to review a conviction issues as of right upon the filing of an application within 90 days after the imposition of sentence. But review on writ of error is based on the record made in the circuit court, and a defendant is as a matter of practical fact precluded from obtaining such review in the absence of provision for the furnishing of the circuit court record at public expense. Such provision is contained in § 253-5. That section was last amended by S.L.H. 1957, c. 239, which became effective on June 3, 1957. The amendment is of significance in this proceeding.
Before the amendment, a defendant received the circuit court record at public expense as of course upon the filing *36 of his appeal, and the only protection against an indiscriminate use of public funds for frivolous appeal was counsel's judgment as to the merits of the appeal.
This situation did not present any serious problem before Griffin v. Illinois, supra, because defendants generally accepted the advice of their counsel and counsel were not wont to recommend the taking of frivolous appeals. The legislative report in connection with the enactment of the provision regarding the furnishing of free record shows clearly that in the contemplation of the legislature the determination as to whether a conviction should be appealed rested with counsel and that counsel was not under a duty to take an appeal which he considered frivolous. The report stated: "There would be no danger of frivolous appeals resulting from the passage of this measure as the bill makes no provision for any additional compensation to the attorney in the event of such an appeal, and the fact that the attorney assigned would have to conduct the appeal on behalf of his client without additional compensation will be a sufficient safeguard against frivolous proceedings in the supreme court." Senate Journal, Tenth Legislature, Regular Session 1919, p. 605.
But the picture has changed since the Griffin case. There is now a tendency for defendants to seek appellate review of their convictions despite counsel's advice as to the futility of their appeals. Anticipating such a development, the 1957 legislature amended § 253-5 by inserting the following provision: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is frivolous or not taken in good faith." The amendment follows the provision in 28 U.S.C. § 1915 (a), the constitutional validity of which is well established. Parsell v. United States, 218 F.2d 232; Clough v. Hunter, 191 F.2d 516; Dorsey v. Gill, 148 F.2d 857, cert. denied 325 U.S. 890.
*37 The effect of the amendment is that now the circuit court has the say as to whether a defendant may have his appeal. The denial by the circuit court of leave to appeal in forma pauperis, unless the denial itself is reversed on appeal, effectively precludes a defendant from obtaining appellate review of his conviction because it prevents him from getting the requisite circuit court record. Such denial is subject to review by this court because the certification that the appeal is frivolous or not taken in good faith "is not final in the sense that the convicted defendant is barred from showing that it was unwarranted and that an appeal should be allowed." Johnson v. United States, 352 U.S. 565, 566. Such being the case, we think that after the amendment a defendant desiring to appeal his conviction is entitled at least to have the circuit court make a determination as to whether he may appeal in forma pauperis and, if the determination is adverse and he is dissatisfied with it, to have it reviewed by this court. Also, he is entitled to assistance of counsel in obtaining the circuit court determination and a review by this court of any adverse determination. Johnson v. Zerbst, 304 U.S. 458.
Petitioner was tried and found guilty by the jury before the amendment, but was sentenced after the amendment. It is evident that in failing to comply with petitioner's request to appeal his conviction assigned counsel acted in accordance with his understanding of counsel's duties before the amendment. But the measure of petitioner's rights was the rights of a defendant after the amendment. Inasmuch as petitioner did not have assistance of counsel in asserting such rights, we will, in the exercise of the supervisory power, enter an order which will permit him to do so. See Territory v. Hayes, 42 Haw. 1.
As an alternative to the specific relief prayed for in *38 petitioner's pleadings, appellate counsel suggested in a memorandum filed just before the oral argument and also in the oral argument that a new trial for petitioner may be warranted. A short answer to the suggestion is that the granting of a new trial is not an appellate function but is a function of the trial court. Republic v. Tokuji, 9 Haw. 458. However, even if we assume arguendo that this court can order a new trial in the exercise of the supervisory power, the showing made by appellate counsel in this proceeding is insufficient for the purpose.
The suggestion of a new trial is based on an affidavit executed by Kahalewai on June 22, 1959, more than two years after petitioner's trial. Kahalewai was the principal prosecution witness at the trial. At the time of the trial, he had already entered a plea of guilty. He was placed on probation after the trial. In the affidavit, he stated that he committed perjury in implicating petitioner in the commission of the crime. It is to be noted that Kahalewai executed the affidavit after the circuit court revoked his probation for violation of its terms and sentenced him to Oahu Prison for the maximum term of 20 years.
Appellate counsel relies on Napue v. Illinois, 360 U.S. 264. That case is not applicable, for there the defendant was convicted on perjured testimony known to be false by the prosecution at the time of the trial. Kahalewai does not state in the affidavit that the prosecution knew his testimony to be false. More to the point are Bolton v. State, 223 Ind. 308, 60 N.E.2d 742; Beck v. Wallmow, 226 Wis. 652, 277 N.W. 705; and Yon v. State, 138 Fla. 770, 190 So. 252, cert. denied 308 U.S. 554.
In Bolton v. State, the petitioner sought a new trial on the ground that the co-defendants who gave implicating testimony at the trial had executed affidavits recanting the former testimony and asserting that they were coerced into so testifying by the deputy prosecuting attorney who *39 threatened them with prosecution under a statute imposing greater penalty if they did not assist the prosecution in obtaining his conviction. The affidavits were made after such co-defendants were given indeterminate sentences of 10 to 25 years in the state prison. The appellate court affirmed the trial court's denial of new trial by stating, "After they were sentenced for 10 to 25 years the penalty of perjury, 1 to 10 years, had no restraining influence." In Beck v. Wallmow, the court in characterizing a similar affidavit, stated: "Such evidence is not newly discovered evidence but newly discovered perjury." In Yon v. State, the court affirmed the denial of a writ of error coram nobis by stating: "We have examined the petition for the writ and find that it states no valid ground for the issuance of such writ. The allegations of the petition are, in short, that the petitioner was convicted on false testimony; that a witness who testified against him has since admitted that the testimony was false; that he can prove such testimony was false and that his attorney on the trial in which he was convicted failed to file motion for new trial and failed to have his case reviewed in the Supreme Court."
In an offer of proof filed after the oral argument, appellate counsel proposes to support Kahalewai's statement that petitioner was convicted on perjured testimony by having Gushikuma, Jackson, and one Henry Nakaahiki testify. Gushikuma and Jackson can add nothing to petitioner's case. They were witnesses at the trial. If they also testify at a new trial, as Kahalewai will presumably do, that they gave false testimony at the original trial, the credulity of the jury will be strained to the extreme. We cannot conceive of any jury believing the testimony of three convicted witnesses all contrary to their original testimony. Nakaahiki did not testify at the trial. However, there is no showing that he was unavailable at that *40 time. Also, his affidavit attached to the offer of proof shows that he was not at the scene of the crime at the time of its commission. So, he was in no position to know whether petitioner participated in the crime. Petitioner's presence at the scene of the crime at the time of its commission is undisputed.
At this point, we take note of appellate counsel's criticism of assigned counsel and will give our consideration to the matter. This court has the duty of disciplining the members of the bar for improper conduct. By the same token, it is also the duty of this court to protect from unwarranted attack those members of the bar who perform their duties diligently and conscientiously. United States v. Edwards, 152 F. Supp. 179, 185.
Appellate counsel does not impugn the good faith of assigned counsel. He stated at the oral argument: "There is no bad faith or malice involved. The young attorney was acting in good faith. He thought he was doing right." He, nevertheless, charges assigned counsel with dereliction of duty in failing to comply with petitioner's request to appeal his conviction.
Assigned counsel did not comply with petitioner's request because, as he testified at the hearing in a habeas corpus proceeding brought by petitioner in the Federal court, "I couldn't in my heart feel that here was a man who was erroneously convicted." Before the amendment of § 253-5, his conduct would have been in accord with the understanding of the legislature regarding counsel's duties as set forth in the legislative report quoted previously in this opinion. But, inasmuch as petitioner was sentenced after the amendment, assigned counsel should have informed the circuit court of petitioner's desire to appeal for the purpose of obtaining its determination regarding petitioner's right to appeal in forma pauperis. Be that as it may, to censure assigned counsel for his failure in that *41 regard is harsh and unfair. Although the amendment had been in effect for four weeks when petitioner was sentenced, copies of the act were not generally available until very much later. Furthermore, even at the present time there is considerable uncertainty not only on counsel's part but also on the part of the circuit courts regarding counsel's duties in connection with the assertion of post-conviction rights of defendants under the Constitution of the United States as construed in recent decisions of the Supreme Court of the United States. Griffin v. Illinois, supra; Johnson v. United States, supra; Farley v. United States, 354 U.S. 521; Edwards v. United States, 355 U.S. 36; Ellis v. United States, 356 U.S. 674; Hill v. United States, 356 U.S. 704; Eskridge v. Washington Prison Board, 357 U.S. 214; Cash v. United States, 357 U.S. 219; Kitchens v. United States, 358 U.S. 42; Burns v. Ohio, 360 U.S. 252. The fact that all of the cited decisions are reversals of the decisions of the United States courts of appeals and of State supreme courts and all but Griffin v. Illinois and Johnson v. United States post-date petitioner's sentence indicates the recent ferment and unsettled status of the law in this field.
Appellate counsel also charges assigned counsel with failure to render a service for which he was compensated. The charge is without merit. It is based on the provision of § 253-5 that the fee prescribed therein "shall be in full remuneration for all services in the circuit and supreme courts performed for the accused person in regard to the offense charged." The provision has not previously been construed by this court. We think that it does not necessarily require counsel to render appellate service before he becomes entitled to the maximum fee. It only means that once the maximum fee is allowed for trial service, no additional allowance will be made for appellate service. Where the service rendered merits the allowance, the circuit *42 court may allow the maximum fee for trial service only. The same view is stated in the legislative report previously mentioned. To our knowledge, the circuit courts have uniformly applied the provision by construing it as we have done here.
We are satisfied from a careful examination of the circuit court file in petitioner's case, which we caused sua sponte to be brought here, that assigned counsel's services in the circuit court merited the allowance of the maximum fee and that the circuit court authorized the payment of such fee for trial service only, without imposing an obligation upon him to take petitioner's appeal. The file shows that assigned counsel was originally assigned to defend petitioner and Gushikuma; that in the interest of obtaining a fair trial for petitioner, he withdrew as Gushikuma's counsel and obtained a separate trial for petitioner; that he spent five days in court on petitioner's trial; that at the trial, he cross examined Kahalewai extensively and called Gushikuma and Jackson as petitioner's witnesses; and that before petitioner was sentenced he made a plea for leniency on the basis of the facts and circumstances of petitioner's apprehension at the scene of the crime as brought out in the trial. He also caused the court to instruct the jury inter alia that a person cannot be convicted simply because there are strong reasons to suspect that he is guilty; that if they found that petitioner did not participate in any way by agreement or otherwise in other crime or crimes as principal or accessory before the fact with co-defendants, then they cannot consider such other crime or crimes in determining petitioner's guilt or innocence of the crime charged; that the mere presence of petitioner at the scene of the crime does not in itself make him guilty of the crime charged; and that if they found from the evidence that Kahalewai and Jackson were accomplices in the crime they should receive such evidence *43 with great care and caution. Thus, assigned counsel did everything at petitioner's trial which appellate counsel proposes to do at a new trial, if a new trial should be granted, except to call Nakaahiki as a defense witness. We have already seen that Nakaahiki can throw no light on petitioner's guilt or innocence.
The criticism directed against assigned counsel pinpoints the desirability of clarifying the procedure and counsel's role in post-conviction proceedings, in the interest of due administration of justice and for the protection of counsel.
We think that the following procedure may be followed where a defendant desires to appeal his conviction in forma pauperis:
1. The defendant shall execute an application for leave to appeal in forma pauperis and an affidavit required under § 253-5 setting forth the fact of his indigency, the nature of the appeal, and his belief that he is entitled to redress on appeal. Counsel shall prepare the application and the affidavit, unless the defendant insists on preparing them without assistance of counsel. The application shall contain a statement of petitioner's desire to appeal in forma pauperis and such other matters as counsel deems pertinent, including a list of the actions of the circuit court to which exceptions were taken and allowed and which counsel considers erroneous. If the defendant requests the inclusion of other actions of the court to which exceptions were taken and allowed, counsel shall comply with such request. The list of exceptions taken and allowed may be incorporated in the body of the application or attached to the application as an appendix and incorporated in it by reference. In preparing the application, counsel shall refer to his own notes and recollection and, in addition thereto, may have reference to the circuit court files, clerk's minutes, reporter's notes of exceptions taken *44 and allowed, and judge's trial notes, if any. If resort to reporter's notes of exceptions taken and allowed is necessary, counsel shall have the reporter read to him the pertinent portions of the notes which record the actions to which exceptions were taken and allowed. We think that the information in the mentioned sources will generally suffice to assure the defendant "appropriate means * * * of making manifest the basis of his claim that the [circuit court] committed error in certifying that the desired appeal was not pursued in good faith," in case he appeals to this court from the denial of the application by the circuit court. Johnson v. United States, supra. We do not think that full transcript of the trial proceedings will be required, except in rare instances, for, under R.L.H. 1955, § 212-14, there can be no reversal "for any finding depending on the credibility of witnesses or the weight of the evidence or for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an exception noted at the time it was committed." Counsel shall prepare the application and the supporting documents, even though he may be of the opinion that no trial error was committed and that the appeal will be frivolous. Their preparation does not imply that in counsel's opinion the appeal is meritorious and is taken in good faith. The application merely indicates to the court defendant's desire to appeal in forma pauperis and his subjective belief that he is entitled to redress on appeal. After the execution of the application and the affidavit by the defendant, counsel shall file all documents in the circuit court.
2. Upon the filing of the application, the circuit court shall hold a hearing in the presence of the defendant and counsel, and may grant or deny it. Denial shall only be upon written certification that the appeal is frivolous or *45 not taken in good faith. If the defendant gives notice of his intention to appeal from the denial, the court shall state in writing his reasons for the action.
In ruling on the application, the court shall consider only matters in the record. 3 Am. Jur., Appeal and Error, § 449; 5 C.J.S., Appeal and Error, § 1474; Territory v. Montgomery, 38 Haw. 561; Peacock v. Lovejoy, 5 Haw. 231; Kekaua v. Kalei, 3 Haw. 713. In a criminal case, writ of error runs only to final judgment and not to any matter thereafter brought to the attention of the court. R.L.H. 1955, § 212-1; Territory v. Marteles, 38 Haw. 305; Territory v. Chillingworth, 38 Haw. 155.
If the court is of the opinion that the appeal is frivolous or not taken in good faith, it is the duty of the court to so certify. Parsell v. United States, supra; Higgins v. Steele, 195 F.2d 366. In Higgins v. Steele, the court stated: "Although no district judge likes to pass upon the correctness of his own decisions, it is his duty, if he is thoroughly convinced that there is no substantial question for review and that an appeal will be futile, to certify that the appeal sought to be taken in forma pauperis is not taken in good faith."
There is no prior decision of this court on the meaning of the expression "frivolous or not taken in good faith" as used in § 253-5. Necessarily, we must be guided by the decisions of the Federal courts.
A recent guide may be found in Ellis v. United States, supra, where the court stated: "In the absence of some evident improper motive, the applicant's good faith is established by the presentation of any issue that is not plainly frivolous. Farley v. United States, 354 U.S. 521. The good-faith test must not be converted into a requirement of a preliminary showing of any particular degree of merit. Unless the issues raised are so frivolous that the appeal would be dismissed in the case of a nonindigent *46 litigant, Fed. Rules Crim. Proc. 39 (a), the request of an indigent for leave to appeal in forma pauperis must be allowed." In United States v. Peltz, 246 F.2d 537, the court dismissed an appeal as frivolous under rule 39 (a) of the Federal Rules of Criminal Procedure. In doing so, it followed United States v. Johnson, 327 U.S. 106, which held that, where the only objection was to the court's findings on conflicting evidence, the appeal did not present a reviewable issue of law and was frivolous.
Good faith of an appeal may not be predicated solely on defendant's belief that there were trial errors and that his appeal is meritorious. We quote with approval the following statement in Cash v. United States, 261 F.2d 731, at page 735: "What is meant by `good faith' on the part of a petitioner seeking to take an appeal from a criminal conviction? Of course it does not mean merely a sincere wish on the part of the convicted person for extrication from his predicament or a sincere belief on his part that injustice has been done. Every convicted person probably has such beliefs, and in that sense every appeal would be in good faith. The statute would then be meaningless. We believe the statute has a meaning. We think `good faith', as the term appears in this statute, must refer to the substance underlying the assertions of error by the petitioner. If these asserted errors are clearly not grounds for reversal, or if they have no basis of fact in the record, they are not in `good faith.'" That case was reversed in Cash v. United States, 357 U.S. 219, but we do not think that the reversal affects the force of the quoted statement.
3. If the circuit court denies the application, the defendant may appeal from the denial to this court. The appeal shall be limited to a consideration of the question as to whether the denial was warranted. This court will waive costs on such appeal. Counsel shall prepare all appeal documents, cause the record on which the denial *47 was based to be brought up, and otherwise render all services necessary to present the appeal to this court. If counsel thinks that the denial was unwarranted, the case shall be briefed. On the other hand, if he is of the opinion that the appeal on the merits is frivolous and concurs in the denial of the application, he shall so inform the court in writing, with reasons. This court may dismiss the appeal if it agrees with counsel's evaluation of the case. If it reverses the denial of the application, the time to appeal on the merits shall run from the entry of the judgment on such appeal, and counsel shall render all services necessary in connection with the appeal on the merits.
As applied to a case in which counsel is in accord with the action of the circuit court, the procedure set forth in the preceding paragraph may appear to be of doubtful efficacy on two counts, first, in allowing an appeal which appears hopeless to all intents and purposes, and second, in requiring counsel who is not in sympathy with the appeal to take the appeal. However, the procedure is based on Johnson v. United States, supra, and Ellis v. United States, supra.
In Johnson v. United States, a case involving an appeal from a denial of leave to appeal in forma pauperis pursuant to a certification under the good faith provision of 28 U.S.C. 1915 (a), the Supreme Court of the United States held: "Such certification is not final in the sense that the convicted defendant is barred from showing that it was unwarranted and that an appeal should be allowed. Of course, certification by the judge presiding at the trial carries great weight but, necessarily, it cannot be conclusive. Upon a proper showing a Court of Appeals has a duty to displace a District Court's certification." We are bound by that holding. We construe it as granting to the defendant a right to appellate review of the denial of leave to appeal in forma pauperis even though counsel may *48 have a well-founded opinion that an appeal may well be futile.
There is a further statement in Johnson v. United States that "a Court of Appeals must, under Johnson v. Zerbst, 304 U.S. 458, afford one who challenges that certification the aid of counsel unless he insists on being his own." That statement raises the question as to the extent of the aid of counsel that is required. The question is answered in Ellis v. United States, where it is stated: "Normally, allowance of an appeal should not be denied until an indigent has had adequate representation by counsel. Johnson v. United States, 352 U.S. 565. In this case, it appears that the two attorneys appointed by the Court of Appeals, performed essentially the role of amici curiae. But representation in the role of an advocate is required. If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." In that case the Supreme Court reversed the affirmance by the Court of Appeals of a District Court denial of appeal in forma pauperis because the Solicitor General conceded that the issue presented on appeal was not one that "can necessarily be characterized as frivolous." We think that the statement in Ellis v. United States means that, on an appeal from a denial of leave to appeal in forma pauperis, counsel need not present in the appellate court any belabored argument in support of defendant's position if he has a well-founded opinion that the appeal is frivolous; that the constitutional requirement of assistance of counsel is satisfied if counsel presents to the court his opinion and the reasons therefor; that the court may dismiss the appeal if it is satisfied that counsel has diligently *49 investigated the possible grounds of appeal and agrees with counsel's evaluation of the case; and that it shall require counsel to brief and argue the case, as in other appeals, if, upon hearing counsel's presentation, it thinks that the appeal cannot necessarily be characterized as frivolous.
It may be argued that if counsel is not in sympathy with the appeal, he should be replaced because, in such a situation, counsel may not afford the representation in the role of an advocate, as contrasted with that of an amicus curiae, which is required under Ellis v. United States. The answer to the question is that there is no assurance that a subsequently appointed counsel will be more effective than the original counsel, and that we must assume that the original counsel, as an officer of the court, will present the defendant's case to the court fairly and as adequately as he possibly can within the bounds of good faith and conscience. Furthermore, in this jurisdiction, § 253-5 contemplates representation by the same counsel both at the trial and in all post-conviction proceedings. Such was the understanding of the legislature, as we have previously noted. The statute provides for the allowance of a single fee for all services. In this respect, the practice in our courts differs from the practice in the Federal courts where counsel is not compensated, is allowed to withdraw after the trial if he considers that an appeal will be futile, and a substitute is appointed in the event of such withdrawal of the original counsel. The right to assistance of counsel does not confer upon a defendant the right to free choice of counsel. The choice rests with the court. This point is aptly stated by Judge Rifkind in United States v. Thompson, 56 F. Supp. 683, 688, as follows: "I have always believed the law to be that the choice of counsel for indigent persons accused of crime was the court's and not the defendant's. Otherwise, pre-eminence at the bar *50 would be the surest road to bankruptcy. * * * It has been my understanding that the courts need have no concern with the private predilections of the defendant for a lawyer of a specified color * * *, or sex or age or political affiliation; and that the defendant may not name the lawyer whom the court must appoint." The court is not required, once it has made an assignment of counsel, to appoint a substitute, even in a situation where the original counsel indicates his lack of confidence in the defendant's cause by advising the defendant to plead guilty, unless such counsel is so incompetent that the assistance rendered by him will be a farce and a travesty on justice. United States v. Gutterman, 147 F.2d 540.
The adoption of the proposed rules of criminal procedure will not materially affect the post-conviction procedure outlined above. The proposed rules abolish bill of exceptions and writ of error. But they require that, for all purposes for which an exception is now necessary, a party make known to the court, at the time the ruling or order is made or sought, the action which he desires the court to take or his objection to the action of the court and his grounds therefor. So, in the preparation of an application for leave to appeal in forma pauperis after the adoption of the proposed rules, where reference to reporter's notes of exceptions taken and allowed is necessary under the present appeal procedure, reference may be had to reporter's notes of objections to the actions of the court and grounds therefor.
In this proceeding, if appellate counsel is willing to render all services that petitioner will need after the entry of the order of this court, he may do so. Otherwise, assigned counsel shall render such services.
As indicated at the outset, we have thus far used the term "appeal" to mean appellate review by writ of error. The term, as used in the order to be entered as indicated *51 below will mean appropriate statutory method of review or "appeal" as used in Rule 37 of the proposed rules of criminal procedure, depending on whether review is sought before or after the adoption of such rules.
In accordance with this opinion, we will enter an order granting petitioner leave:
1. To apply in the circuit court for leave to appeal in forma pauperis, within 15 days from the entry of the order or such further time as the circuit court may allow;
2. To appeal to this court, within 45 days from the denial by the circuit court of the application for leave to appeal in forma pauperis, if the circuit court takes such action; and
3. To appeal to this court, within 45 days from the entry of the judgment of the court reversing the denial of the application for leave to appeal in forma pauperis, if the circuit court denies the application and this court reverses such denial.