COMMONWEALTH *vs.* EDWARD LAVERY.

Middlesex.   March 22, 1926. — March 29, 1926.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Evidence,* Competency, Garage records, Of state of mind.   *Larceny.* *Breaking and Entering.*   *Practice, Criminal,* Exceptions, Charge to jury.

At the trial of an indictment charging breaking and entering with intent to commit larceny, and larceny, there was evidence to show that the defendant, in an automobile, waited outside the entrance to premises

while a confederate entered. Interrogated before his arrest, the defendant stated that he met a certain man at 6:30 on the night in question and went to a certain garage and got the automobile. Later he told a conflicting story in which he said he got the car at the garage at about 8 or 8:15 on another evening. An employee of the garage, refreshing his memory from a record kept under the provisions of G. L. c. 90, § 32; St. 1924, c. 379, testified that the defendant got the automobile on the night in question at 7 P.M. The page of the record book then was admitted in evidence subject to an exception by the defendant. *Held*, that, even if it be assumed that the record itself was incompetent, its admission in the circumstances could not be held to be reversible error.

There was evidence, at the trial above described, that the defendant, while in the automobile on the night of the crime, was joined by a man. The garage employee testified that on a night a week preceding the night of the crime the defendant had gone to the garage to get the car and had been accompanied by a man of whom he gave a description, which corresponded with that of the man with the defendant on the night of the crime. *Held*, that the evidence was competent.

In his statement to a police officer previous to his arrest, the defendant had stated that he was not in the neighborhood of the crime on a night the week before. Evidence was admitted, subject to exceptions by the defendant, tending to show that on that night he was in the neighborhood surreptitiously looking into darkened apartments and making investigations. *Held*, that the evidence was admissible.

Instructions to the jury at the trial of the indictment above described, which permitted them to draw inferences as to consciousness of guilt on the defendant's part as shown by his conflicting stories to the police officers, were *held* not to constitute error.

From the evidence at the trial above described, it was *held*, that the jury had a right to infer that the defendant and the other man had planned to commit the crimes; that the defendant's part was to wait in the automobile at a convenient place in the neighborhood while the crimes were being committed and, after giving a signal, to meet the accomplice and aid him in getting away; and that in such circumstances the defendant could be found guilty as principal.

Where, at the trial of an indictment charging breaking and entering in the night time with intent to commit larceny, the question, whether the evidence was sufficient to justify the jury in finding that the crime was committed in the night time, was not raised, that question is not before this court on an exception to a denial of a motion that a verdict of not guilty be ordered; in this case there was evidence to justify the conclusion that the crime was committed in the night time and, moreover, this court *stated*, even if there had been no evidence that the crime was committed between one hour after sunset and one hour before sunrise, the jury could have found the defendant guilty of breaking and entering in the day time.

An exception taken to the exclusion of a question asked of a witness in cross-examination is not entitled to consideration by this court if it appears that the question was answered before the ruling by the judge and that neither the question nor the answer was struck out.

INDICTMENT, found and returned on February 6, 1925, charging the defendant with breaking and entering in the night time with intent to commit larceny, and with larceny.

In the Superior Court, the case was tried before *Flynn*, J. Material evidence and exceptions saved by the defendant are described in the opinion. The defendant rested at the close of the case of the Commonwealth and moved that a verdict of not guilty be entered. The motion was denied. The defendant was found guilty and alleged exceptions.

The case was submitted on briefs.

*P. J. Delaney*, for the defendant.

*R. T. Bushnell*, Assistant District Attorney, for the Commonwealth.

SANDERSON, J. The defendant was convicted on an indictment in two counts each charging him with breaking and entering a dwelling house in the night time of January 25, 1925, and with stealing watches and jewelry therefrom. The exceptions relate to the refusal by the trial judge to direct a verdict for the defendant, to the rulings on evidence, and to a portion of the charge.

The places broken into were the upper and lower apartments of a two-family house on Everett Street, in Arlington, the eighth or ninth house on that street from Massachusetts Avenue. The occupants of both apartments were away from home until shortly after nine o'clock on the evening of the breaks, having left, in one case, a little before six, and in the other somewhat earlier. When they returned they found that both apartments had been broken into and that the property described in the indictment was missing. On the same night, at about 8:05, a police officer saw an Essex touring car, bearing the Massachusetts registration number 409,292, parked near the curb on Massachusetts Avenue diagonally across from Everett Street; and at 8:25 he saw the same car at the same place. The defendant was sitting at the wheel, and when the officer passed in front of the car the defendant started out of his seat to see who he was. At 8:30 the defendant passed his hand over the dash light three times and a man came out of Everett Street, went to the rear of the Essex car, walked down Massachusetts Avenue

two hundred and fifty or three hundred feet, and stood in the dark. The defendant then started the automobile, drove to the place where the man was, took him in and went toward Cambridge. This man was described by the officer as being about five feet, six or seven inches tall, weighing about one hundred and forty pounds, with very broad shoulders and wearing a black form-fitting overcoat, with a dark suit and a black derby hat.

The automobile was registered in the name of Margaret P. Collins of Roxbury, and through her the defendant was located in Boston on January 27, 1925. He told the officer inconsistent and conflicting stories about his movements on the Sunday night in question. At first he said that he had an appointment with James O'Brien, whom he had known for about five years and who never did any work; that O'Brien called for him at about 6:30 on the night of January 25 and they went to Luna Park Garage in Revere, took the car which belonged to Margaret P. Collins, and after meeting her arrived at Boston at 7:30 or 7:45, and remained there until 11:45; that O'Brien wore a dark derby hat and a dark form-fitting overcoat. When the officer told the witness that his statement did not agree with that made by Mrs. Collins, the defendant said that he guessed he had made a mistake and had described the occurrences of Saturday night; that on Sunday night, the twenty-fifth, he left his house at about 8 or 8:15, took the car (which he referred to as "my car") from the Luna Park Garage, drove through several named places just taking a drive around to see some people, and arrived at Revere to put up the car shortly before twelve o'clock; that no one was with him from the time he left until he returned; that he made one stop on Massachusetts Avenue, in Arlington, for nothing in particular, "just simply to rest up"; that he stopped there about twenty minutes and drove away from Arlington at about 9:30. When asked if he was sure he did not pick up a man in Arlington and drive toward Cambridge, he said that a man on the curb, some little distance from where the automobile had been standing, asked if he was going to Cambridge and the defendant carried him to Harvard Square,

where he got out saying he was going to take the subway for Boston. The defendant stated that he at no time when in Arlington inquired for anyone by the name of O'Donoghue; that he was in Arlington a week before January 25, but he thought it was on Monday and not on Sunday night. At a later conversation he said he knew that O'Brien had disappeared because of a telephone message from O'Brien's mother and that he understood that he went away because "they were looking for him." When asked if he would give the officer any information as to where the jewelry could be recovered, he said he did not want to make any further statement about this at that time, that he first wanted to talk with his father about the matter.

A witness employed at Luna Park Garage, using the entries made by himself in a garage record book to refresh his memory, testified that the defendant came into the garage on January 25, 1925, at seven o'clock and got an Essex touring car numbered 409,292. The page of this book containing the entry of January 25 was then offered and admitted, subject to the defendant's exception. The statute requires garage records to be kept, and prescribes the manner in which entries shall be made. The books are open at all times to the inspection of the registrar and his agents and of any police officer or constable. G. L. c. 90, § 32; St. 1924, c. 379. The entries on the page admitted were not copied into the record, but it may be fair to assume that they were corroborative of what the witness had already stated in testimony. This evidence would also have some tendency to corroborate the defendant in his first statement to the officer as to the time of taking the automobile from the garage, and the only change afterwards made by him in respect to that matter was that he left his house to go for it at a somewhat later hour in the evening. It is not necessary to decide whether the sheet containing the record was admissible under the principle discussed in the cases collected in *Commonwealth* v. *Slavski*, 245 Mass. 405, at page 414, for if it be assumed that the record itself was incompetent, its admission under the circumstances could not be held to be reversible error.

The witness employed at the garage also testified that the automobile in question had been in the garage about six weeks, that the defendant paid $4 weekly as rent, and no one else took the car out; and, subject to the defendant's exception, described a man who came in with the defendant to get the car the Sunday before the twenty-fifth as being about five feet six inches tall, with a derby hat and black, tight, form-fitting coat. This evidence was competent for its tendency to prove that the defendant's companion on January 18 was the same man who came out of Everett Street and joined him on January 25.

A woman, who lived on Harlow Street about a stone's throw from 47 Everett Street, testified, subject to the defendant's exception, that on Sunday night, January 18, 1925, at about 9 or 9:05, after the lights were out in her apartment, her door bell rang and she saw the defendant crouching and moving from side to side looking under the curtain on the door into her apartment; that as she opened the door he jumped up quickly and, in a stammering manner, asked if O'Donoghue lived there, and when told that she knew no one of that name said "this is 33 Harlow Street, isn't it?" The witness said "No," and the defendant looking at the door number said it must be the next house. He went to the next house and then came out and ran from that house to the avenue. There was no house numbered 33 on that street, and the witness was permitted to testify, subject to the defendant's exception, that there was no person by the name of Donahue living on Harlow Street, so far as she knew. The testimony relating to the events of January 18, was admitted to contradict statements made by the defendant to the officer and to show that the defendant was in the neighborhood making investigations, and was admissible for those purposes.

The defendant excepted to the part of the charge relating to consciousness of guilt. The trial judge stated in substance that when the defendant was interrogated as to his conduct on Sunday night he gave different and conflicting stories and that this was evidence of consciousness of guilt; that if the jury found as a fact that the stories were contra-

dictory, they might say whether the reason why they were contradictory was that he could not give a satisfactory explanation of his conduct Sunday night, for the reason that he was a participant in the break; and that the question was, whether they would draw that deduction or inference when taken in connection with the testimony as to his being on Massachusetts Avenue on the evening of January 25, as stated by the officer; that they were to consider first, whether or not the testimony as to his conduct on the evening of January 18 tended to show that he was planning to commit crime in the neighborhood; second, whether or not the evidence of his being on Massachusetts Avenue on the evening of January 25 tended to show that he was an active participant in a joint enterprise to steal, to break and steal in those premises; and third, whether or not his conduct when interrogated by the officer showed a consciousness of guilt; and that it was for the jury to say, taking all those things together, whether the defendant had been proven guilty beyond a reasonable doubt.  The exception to the part of the charge relating to the consciousness of guilt must be overruled.  The jury had a right to infer from the evidence that the defendant and the man who rode away with him had planned to commit the crimes; that the defendant's part was to wait in the automobile at a convenient place in the neighborhood while the crimes were being committed and after giving a signal, to meet the accomplice and aid him in getting away.  Under such circumstances the defendant could be found guilty as principal.  *Commonwealth* v. *Knapp*, 9 Pick. 496.  *Commonwealth* v. *Lucas*, 2 Allen, 170. *Commonwealth* v. *Clune*, 162 Mass. 206.  *Commonwealth* v. *Baldi*, 250 Mass. 528, 534.  "From the defendant's conduct and speech and all the circumstances in the case, his guilt could be inferred."  *Commonwealth* v. *Gentile*, *ante*, 116. *Commonwealth* v. *Spezzaro*, 250 Mass. 454, 457.  *Commonwealth* v. *Devaney*, 182 Mass. 33.

The question, whether the evidence was sufficient to justify the jury in finding that the crime was committed in the night time, was not raised at the trial and is not involved in the motion for a directed verdict.  Even if there were no

evidence that the crime was committed between one hour after sunset and one hour before sunrise, the jury could have found the defendant guilty of breaking and entering in the daytime. *Commonwealth* v. *Clifford*, 254 Mass. 390. There was evidence however to justify the conclusion that the crime was committed in the night time.

The right of cross-examination does not permit a party to ask a question in the form, "So that you lied to this man right here at the outset of this investigation"; but the exception taken to the exclusion of this question is not entitled to consideration, for the reason that the answer was made before the ruling and the evidence remained in the case.

The motion for a directed verdict was properly denied. All exceptions argued have been considered and no reversible error is disclosed.

*Exceptions overruled.*