## STATE OF HAWAII *v.* EDWARD JOSEPH CARVELO.

### No. 4210.

MARCH 24, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ AND LEWIS, JJ.,
AND CIRCUIT JUDGE HEWITT
ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY CASSIDY, J.

Appellant, Edward Joseph Carvelo, hereinafter also referred to as the "defendant," was charged with first degree burglary under an indictment alleging that, on

February 16, 1957, he and Richard Kahalewai, Franklin William Jackson, and Richard Mitsugi Gushikuma burglarized the warehouse of Pacific Motors, Limited, in Honolulu. Defendant was separately tried by a jury and found guilty as charged. Pursuant to our ruling in *In re Edward J. Carvelo,* 44 Haw. 31, 352 P. 2d 616, he applied to and was granted leave by the trial court to appeal in forma pauperis.

Review of the conviction is now before us on writ of error. Reversal is sought on three specified grounds, viz.: (1) that the evidence was insufficient to support the verdict; (2) that evidence respecting defendant's participation in prior burglaries was improperly received; and (3) that the trial court committed error in admitting in evidence a pair of wire snips, a bunch of keys and a watch found on the Pacific Motors premises by the company's president after the burglary. The specifications will be taken up in the order stated.

The issue on the sufficiency of the evidence is properly reserved by exceptions taken to the denial of a motion for a directed verdict made at the close of the prosecution's case, to the trial court's refusal to instruct the jury to find the defendant not guilty on submission of the case, and to the verdict rendered. We will first review the evidence adduced by the prosecution which supports the verdict.

The principal witness for the prosecution was one of the codefendants, Richard Kahalewai. It was brought out on cross-examination by defense counsel that the witness had originally entered a plea of not guilty to the charge of the indictment but later changed it to one of guilty and that he had not been before the court for sentence at the time of defendant's trial.

Kahalewai testified that on the evening before the burglary he was driving an automobile, a two-door Pon-

tiac coupe, owned by his part-time employer, Larry Moody; that he picked up the three others named in the indictment at Kuhio Beach in Waikiki at about 9 o'clock; that they were all "broke" and it was agreed among them, while they were driving around, that they would go on an expedition to steal money; that at about 11:30 or 12 o'clock they set out for the Mapunapuna Tract, where he, Jackson, and Gushikuma entered and stole money and other articles from some fifteen offices, while the defendant waited in the automobile under instructions to drive it back to its owner's place if at any time he heard a loud whistle to indicate they were in trouble. The witness further testified that after committing the burglaries in the Mapunapuna district, and while driving back to Waikiki at about 2 or 3 o' clock in the morning of February 16, as they neared the Pacific Motors, Limited, on Kapiolani Boulevard, he said, "Let's try one more place," and, when Gushikuma and Jackson assented, he drove the automobile into an alley between Pacific Motors and a service station on Kapiolani Boulevard, backed it around and parked it behind the service station facing in the direction of Waikiki. He said the defendant had been sleeping and that he woke him up; that the defendant got out of the car to let the others out and then got back into it. Kahalewai stated that he returned to the car, took a crowbar, a pair of wire snips and two pairs of gloves from the back of it and then proceeded with the other two codefendants to Pacific Motors. Kahalewai first testified that when he woke the defendant he "told him in case anything happened to take the car away," but later in his testimony stated that he had given the defendant instructions to that effect only at Mapunapuna. He testified that they broke the lock of the outer door to the Pacific Motors warehouse with the crowbar, and while trying to break through a door to the inner store the door got caught

and made a loud noise; that shortly thereafter two or three officers appeared on the scene and that when one of them tried to gain entrance to the premises through the outer door, he held it from the inside, and the officers apparently thought it was locked, and left. The witness said he heard the officers question the defendant and that the defendant told them he had been sleeping in the car. Kahalewai said he, Jackson, and Gushikuma left the scene without detection about a half hour later.

Two police officers, Herman Brandt and Jerry Freeman, were called as witnesses. Each testified that he went to the scene in response to a call to proceed to Pacific Motors. Brandt arrived before Freeman. Freeman testified that shortly after his arrival he and Brandt converged on the parked Pontiac and found the defendant in the front seat near the wheel of the car, crouched down, or as recorded from a demonstration, in a "slumped down" position, and that they found two bags containing money, and a pistol, under the front seat, a pair of gloves, a black jacket and an open handbag of tools in the trunk of the car, and some tools lying loose in the back of it. The two bags of money and the pistol were found under the same spot, the witness said, and the pistol was "imbedded in the seat covers in the front seat where Carvelo was sitting."

The defendant was charged as a principal. The evidence discloses that he did not directly participate in the commission of the burglary charged. However, in this jurisdiction one who, being present, aids and abets another in the commission of an offense may be directly charged as a principal, and convicted as such. Revised Laws of Hawaii 1955, § 252-1, provides: "All who take part in the commission of any offense, or, being present, aid, incite, countenance or encourage others in the commission thereof, shall be deemed principals therein," and

§ 252-4 reads: "Every person who aids in the commission of an offense, or is accessory before the fact thereto, is guilty of such offense, and shall be subject to indictment, trial and punishment therefor, in the same manner and to the same effect as if he had been present at the commission thereof and actually taken part therein." The jury was properly instructed on these features of the applicable law.

On the facts presented by the prosecution's case, the jury could reasonably have concluded that the defendant's presence in the car at the scene of the burglary was for the purpose of aiding in its accomplishment to the extent, at least, of providing some assurance that the Pontiac would be removed from the scene of the crime in the event the active participants were detected in the process of committing it, thus eliminating the opportunity that would otherwise exist for tracing the identity of the burglars through the registered owner of the automobile. The fact that as things worked out the defendant was prevented from performing his part, in no way detracted from the permissible inference or conclusion that his role was to prevent detection of the actual burglars in the contingency that they were interrupted by an outsider during the course of their work.

Under the prosecution's evidence the defendant stood, in all material respects, in the same category as a watchman. By analogy, his guilt as a principal could be sustained on the same principle which holds a watchman guilty. "Acting as a watchman under our statute would class him as a principal." *Territory* v. *Bollianday,* 39 Haw. 590, 593. "All the surrounding circumstances, when considered together, warranted the jury in finding the defendant guilty. If he was there and watched on the outside, while Kelly got the money and other property from the store, he was just as guilty as if he had actually

taken the money out of the cash register himself." *Knight* v. *State,* 165 Ark. 226, 228, 263 S.W. 782, 783. See also *Commonwealth* v. *Lavery,* 255 Mass. 327, 333, 151 N.E. 466, 468; *People* v. *Martin,* 128 Cal. App. 2d 361, 364, 275 P. 2d 635, 637; 12 C.J.S. *Burglary* § 29, p. 688.

Applicable also is the language in *Territory* v. *Ebarra,* 39 Haw. 488, at page 491, as follows: "It has been held sufficient that one jointly charged who accompanied and departed with the others to and from the scene, and who was present at the scene when the robbery was committed and acquiesced therein, is guilty of the crime of robbery."

In the instant case, in ruling on the defendant's motion for a directed verdict at the close of the prosecution's case, the trial court stated: "To the Court it would be a miscarriage of justice to allow a man to participate by original agreement, as the evidence shows, continuing up to and including the time they walked out to do this particular job. He doesn't know that they are going into Pacific Motors but he did have to have some inference that they were going into some place, not any particular place, with intent to steal and his job was as before, to get away in the event of trouble. In this case, unfortunately, he didn't get away and also the signal was never given so he could get away, he never got the get-away signal. The motion will be denied." The record fully justified the ruling and we find no error in the denial of the motion.

We now consider whether the case put on by the defense calls for a different view of the adequacy of the evidence so as to require this court to sustain the exception to the verdict.

The defendant did not testify. The jury was properly instructed on his right in that respect. The codefendants Gushikuma and Jackson were called as witnesses. Gushikuma had not yet been tried on the charge and was ex-

cused without testifying when he claimed the privilege against self-incrimination. Jackson had already been convicted on his plea of guilty to the charge of the indictment.

In flat contradiction to Kahalewai, Jackson insisted that the defendant was not picked up until about 1:30 in the morning of the 16th. The witness said that he had known the defendant for about a week; that as Kahalewai drove the automobile by, he saw the defendant staggering out of a restaurant in Waikiki and that after some contention with the other occupants of the car, he prevailed on them to pick the defendant up to take him home, in order, the witness said, to keep the defendant out of trouble because he was drunk. He testified that the defendant got into the front seat of the car and immediately fell asleep. It was Jackson's testimony that the Pacific Motors burglary had been agreed upon before the defendant was picked up and that when they were on their way there, he asked the others to take the defendant home first but they "didn't want to." The witness said the defendant was passed out and that he remained asleep from the time he was first picked up until after the witness and the other two defendants left the parked car to enter the Pacific Motors warehouse. The full import of Jackson's testimony was that the defendant took no part in planning the burglary, did not participate in any way whatsoever in its commission, and had no knowledge of it because he was passed out and asleep at all times involved.

On cross-examination Jackson was questioned relative to being in the Mapunapuna district prior to the Pacific Motors burglary. He first said he didn't know anything about Mapunapuna and then claimed the privilege against self-incrimination. The claim of privilege was sustained and the prosecution was precluded from questioning the witness on anything that might tend to show his com-

mission of any offense other than the one to which he had plead guilty.

Based on Jackson's testimony and the claim of corroboration thereof from certain selected portions of the testimony of the prosecution's witnesses, it is appellant's contention that "the undisputed evidence thus clearly establishes the Defendant's innocence of the crime charged and dispels the 'suspicion' for which he was arrested." The constant refrain in argument and brief has been that the defendant can not be held criminally responsible in this case because he was asleep or passed out when the "crime charged" was planned and committed.

Appellant actually recognizes that the evidence in the case was conflicting, but in respect to the evidence "concerning the time before the crime charged had been planned and committed by the three co-defendants" attempts to dispose of the major conflict between the testimony of Kahalewai placing the defendant in the car from 9:00 or 9:30 of the evening before to 3:30 of the morning of the burglary, and that of Jackson placing him therein from only 1:30 to 3:30 in the morning, by arguing: "Both testimonies, however, merge from the time of 1:30 in the morning to support the undisputed evidence that the Defendant thereafter was asleep or passed out when the crime charged was planned and committed." Again, in respect to the evidence "concerning the time after the crime charged had been planned and committed by the three Co-defendants," appellant argues: "This evidence is conflictive in itself but in no way conflicts with the undisputed evidence that the Defendant was asleep or passed out when the crime charged was planned and committed for it deals with a subsequent set of events." We find the contentions insupportable.

In the first place, we see no justifiable basis for limiting the effect or the scope of review of the evidence on

the merger theory proposed by appellant. Under the evidence presented by the prosecution the genesis of the "crime charged" was not, as, in effect, appellant urges, the decision made on the way back from the Mapunapuna Tract selecting Pacific Motors as a place to burglarize, but was rather the general agreement the four defendants made the previous evening before they started out on their expedition.

Kahalewai's testimony permits no other conclusion than that the defendant was awake, understood, and agreed to the proposal that the four members of the group unite in a general expedition to obtain money by theft. It was only the selection of the places to be burglarized that was left open for future decision under the agreement. As the witness testified: "We didn't make any plans that we were going to hit a certain place or what." So, even if the selection of Pacific Motors was an "on the spur of the moment" decision, made while the defendant may have been sleeping, the burglary of the premises could well be considered to have been within the scope of the general plan the defendant had agreed to participate in, and to have been committed while the plan was still in operation. There is nothing in the prosecution's case to indicate that the defendant at any time desired to disassociate himself from his confederates, or to compel a holding that his joinder in the adventure terminated when the group left the Mapunapuna Tract. See 22 C.J.S. *Criminal Law* § 89, p. 161.

In the second place, a fair review of the record reveals that Jackson's version that the defendant was passed out and asleep when the crime charged was committed is definitely not undisputed. There was ample evidence to controvert Jackson's testimony to that effect.

The defense was founded and rested on Jackson's testimony that the defendant was intoxicated to the de-

gree of insensibility. Although the record warrants the conclusion that the defendant had been drinking, there is also evidence in the record which, if believed, would negative any notion that his faculties had been appreciably affected by his indulgence.

At one point in his testimony Kahalewai said that every time he came back to the car in the Mapunapuna Tract the defendant "was breaking open the bottle"—referring to a pint of vodka obtained from one of the places burglarized in the tract. However, in contrast to Jackson's testimony that the defendant was staggering when they first picked him up and that he passed out when he got into the car, it was Kahalewai's testimony that he didn't know if the defendant was drunk or not but that "he sounded o. k." Similarly, when Officer Brandt was asked if he could tell whether or not the defendant had been drinking, he replied: "No. He didn't show any as far as I had noticed. I didn't notice any alcoholic breath or anything like that, except that I did notice, I believe it was a half a pint of whatever, gin or vodka, I don't know what it was, and it was slightly used." There is much more in the record bearing on the subject, but reference to the foregoing testimony alone is sufficient to demonstrate that the question of whether the defendant was bereft by intoxication of the ability to function, either mentally or physically, was squarely before the jury as an issue of fact upon the conflicting evidence.

In respect to appellant's contention that the evidence requires and only permits a finding that he was asleep when and while the burglary charged was being committed, we reach the same conclusion that a factual issue was presented.

As has been noted, Jackson testified that the defendant was passed out and asleep from beginning to end. Specifically in relation to the Pacific Motors burglary, it

was his testimony that the defendant was in the front seat of the car and when Kahalewai got out of the car the defendant "laid down," or, as the witness subsequently stated, "As soon as Richard got out of the car he fell down." We have seen that Kahalewai's testimony was quite different. Kahalewai testified that after they stopped for the Pacific Motors burglary he awakened the defendant and the defendant got out of the car to let the others out and then got back into it.

Further evidence refuting Jackson's testimony that the defendant was passed out and asleep while the burglary charged was being committed was given by Police Officers Brandt and Freeman.

Brandt was the first on the scene. He parked his car on Kapiolani Boulevard. Freeman said he parked his car alongside Brandt's and that as he walked into the alley leading to the rear of the service station, he saw. Brandt walking out. Freeman continued that he joined Brandt; that they approached and converged on the parked Pontiac from opposite sides; that Brandt flashed his light on the defendant who was "slid down" on the front seat so that he could not be seen from in front of the car, and that, "when Officer Brandt shined the light in his face he was wide awake, and he asked him to get out of the car, which he did." The officer further testified that upon being questioned relative to his presence at the scene, the defendant stated he had dropped off two colored persons and a local boy down at Dearborn Chemical Company.

Brandt's testimony added a circumstance which permitted another basis for the inference that defendant was not completely inactivated or inactive when the burglary charged was being committed. The officer said that after parking his car in front of the service station he walked around to the rear of it and noticed the Pontiac parked in the alley. He looked into the car but did not see any-

one in the front seat. He said it was light enough to see. He proceeded to Pacific Motors warehouse and, about five minutes later, after an unsuccessful attempt to enter it, was returning to his car when he noticed as he passed the Pontiac that the door on the driver's side was slightly ajar. He said this attracted his attention because the door had been completely closed when he first checked the car, thus "indicating that the door had been opened after I had last seen it," and that it was for this reason he rechecked the Pontiac. The officer said that after finding the defendant in the car, he asked him why he was there and received the reply that he was waiting for his friends; and further, that the defendant told him the car belonged to a friend of his, and that when asked who his friend was the defendant replied he didn't know.

Notwithstanding the foregoing evidence, appellant strenuously argues that Jackson's testimony, to the effect that the defendant was passed out and asleep when the Pacific Motors burglary was committed, finds full corroboration in the testimony of Kahalewai and Officer Brandt.

The portions of Kahalewai's testimony relied on are summarized and treated in appellant's brief, as follows: "That when the crime charged was planned by the three co-defendants, the Defendant 'was sleeping' (Tr. 33); that when they arrived at the scene of crime, the Defendant was still sleeping and had to be awakened to permit Kahalewai to get out of the car (Tr. 8, 12, 26); that when they left the Defendant in the car at the scene of the crime, Kahalewai guessed 'he must have gone back to sleep' (Tr. 27) for when they 'went back he fell asleep' (Tr. 8) but, of course, while they were away committing the crime, Kahalewai couldn't and 'didn't check' to see 'if he was sleeping or not' (Tr. 27). After the crime had been committed, however, Kahalewai heard the police officers talking i. e., 'Then I guess they must have woken

Mr. Carvelo and asked him what he was doing in the car. He said he was sleeping.' " With the exception of the portion respecting the defendant being asleep prior to arrival at the scene, the testimony referred to obviously consists only of conjecture and the repetition of a self-serving declaration of the defendant. We find in this testimony little, if any, basis for the contended corroborative effect. The weakness of its probative force further appears from consideration of Kahalewai's direct testimony that the defendant "went back in the car when we went around the building" and that "I don't know what he did after that." In addition, the State was not bound by Kahale-wai's testimony on the point. "The State was not bound by the testimony of its witness Wilson because, for one reason, there was other evidence from which the jury could find the material facts contrary to his testimony." *State* v. *Jones,* 363 Mo. 998, 1005, 255 S.W. 2d 801, 804. See also *People* v. *Lee,* 307 Mich. 743, 751, 12 N.W. 2d 418, 421; 98 C.J.S. *Witnesses* § 630, p. 647.

The reliance on Brandt's testimony for corroboration of Jackson's version was based on the fact that the officer, speaking relative to the time he first saw the defendant, stated that the defendant was not "coherent" but as one who "acted in a stupor manner." From this appellant argues, "Significantly, one arresting officer found the Defendant not to be 'coherent' but as one who 'acted in a Stupor manner' (Tr. 62, 66) consistent not only with Kahalewai's and Jackson's testimony as well as with the Defendant's statement that he had been asleep (Tr. 10, 31) but with what would be ordinarily expected of a man suddenly and rudely awakened out of a deep or drugged sleep. To that extent the part of evidence concerning the period after the commission of the crime charged tends to support the undisputed evidence that the Defendant had been asleep or passed out a half an

hour or so ago when that crime had been planned and committed."

By focusing on a single question and answer appellant has a basis for contending that Brandt did testify that the defendant was not coherent. But that the witness did so inadvertently, and meant just the opposite, is indicated by the context of the following excerpt from the transcript:

"Q Was the defendant coherent when he spoke to you, Officer Brandt?

"A No, he wasn't.

"Q Did you have trouble understanding him?

"A No. I could very well understand him."

Appellant's basis for contending that the prosecution's evidence bears out Jackson's version of defendant's condition, by showing he was in a stupor, is also predicated on the selection and interpretation of a single answer of Brandt to a question on cross-examination, as follows:

"Q In other words, when you shined the flashlight in his face he got up right away?

"A He acted in a stupor manner."

The jury could not have interpreted this answer as the appellant does. That Brandt meant the defendant was feigning clearly appears from his testimony given on direct examination, as follows: "So I made a check of the Pontiac again and I noticed someone sort of in a crouched position, and by flashing my flashlight into his face I noticed he was sort of playing possum. * * * After I had shone the light in his face he opened his eyes. Well, he tried to act as though he was in a sleep, or something like that, so I asked him his business there and he told me he was there for approximately an hour or so waiting for some friends of his."

In the attack on the verdict, appellant also points out a number of inconsistencies in the testimony of the prosecution's witnesses. They have been considered and are

found to be of minor consequence. None warrants our extending this opinion by particularization or our deviating from the general rule that the reconciliation of inconsistencies in testimony is for the jury, and not for the appellate court. "In determining whether evidence is sufficient to support a finding of guilt, this court will not attempt to reconcile conflicting evidence, but will limit its consideration to whether there is sufficient evidence to sustain the verdict." *Territory* v. *Ebarra,* 39 Haw. 488, 492. "In testing the legal sufficiency of the evidence to support the verdict it must be considered in its strongest light for the state." *Knight* v. *State, supra,* at page 782. Also *Glasser* v. *U. S.,* 315 U. S. 60, 80; and *Territory* v. *Hart,* 35 Haw. 582, 590.

On the basis of all of the evidence above reviewed it is apparent that at the close of the entire case, just as at the close of the prosecution's case in chief, the jury had before it evidence from which, if believed, it could have concluded that although the defendant may have been asleep when Pacific Motors was selected as a place to burglarize, he soon thereafter became aware of what was going on, and he knowingly and willingly remained in the car, for the purpose and with the intent of aiding his associates by standing by to do whatever might become necessary or advisable to prevent or minimize the possibility of detection. On the other hand the jury had the testimony of Jackson, from which, if given credence, it could have concluded that the defendant was unaware of anything concerning the burglary and that, through circumstances beyond his control, he was innocently present at the scene of its commission. From the affirmative nature of the defense offered, the case developed into one turning on the determination of the credibility of witnesses, with the credibility of Jackson pitted not only against that of Kahalewai but also against that of Brandt and Free-

man. And in this contest there are other features of the record weighing against the defense.

The jury was given the standard instruction requiring it, in weighing a witness's testimony, to consider "the probability or improbability of the story told by him." In the application of this rule we find it difficult to conceive of reasonable men giving much weight to Jackson's story that he desired and requested his companions to pick up the defendant, a friend of only a week, knowing, at the time, that his group was actually on the way to commit a crime. But aside from that, we think the jury would have had to stretch the rule beyond all reason not to have been extremely skeptical of the probability that Kahalewai and Gushikuma would have permitted the defendant, intoxicated or sober, to accompany them on the burglarizing expedition if he were not to have been a participant in it. The very nature of the expedition was incompatible with the idea of carrying an outsider along as excess baggage.

Furthermore, in connection with determining Jackson's credibility, there was before the jury evidence of certain prior inconsistent statements which tended to impeach him. Jackson had made a statement to the police after his arrest. In cross-examination, Jackson denied he told the police anything incriminating the defendant, specifically denying that he had stated the defendant was supposed to wait in the car. In rebuttal, the prosecution called the police officer who had taken Jackson's statement. The officer testified that when he asked Jackson what part the defendant was supposed to have had in the burglary, Jackson said "Carvelo remained in the car" and that in response to his inquiry as to whether the defendant was supposed to have been a watchman, Jackson answered, "I think so."

It is expressly prescribed by statute (R.L.H. 1955,

§ 212-14) that on review by writ of error there shall not be any reversal by this court in a term case "for any finding depending on the credibility of witnesses or the weight of the evidence." In the application of the statute, it is established law in this jurisdiction that a jury verdict in any case involving conflicting evidence and depending on the determination of credibility of witnesses or the weight of the evidence is invulnerable when attacked on appeal if there is any substantial evidence amounting to more than a mere scintilla tending to support the findings necessary to the verdict rendered. *Territory* v. *Young*, 32 Haw. 628, 634; *Territory* v. *Gagarin*, 36 Haw. 1, 7; *State* v. *Foster*, 44 Haw. 403, 409, 354 P. 2d 960, 964. Since the verdict depended on the jury's view of the credibility of the witnesses and the weight of the evidence, and there appearing an abundance of substantial evidence on the record to warrant the verdict against the defendant, appellant's assignments questioning the sufficiency of the evidence can not be sustained.

The second specification of error is that Kahalewai's testimony relating to the commission of burglaries in the Mapunapuna Tract was improperly received in evidence. The testimony was admitted without objection or exception. There is therefore no particular ruling on its admission properly reserved for direct review by this court. *Territory* v. *Patterson*, 38 Haw. 245, 248; *Territory* v. *Guillermo*, 43 Haw. 43, 45; *Territory* v. *Pierce*, 43 Haw. 246, 248. However, appellant urges that the regularity of the admission of this testimony is "of first importance in this case" and argues that "the question as to the competency of such testimony merges into the question of sufficiency of the entire evidence to support a verdict of guilty for the crime charged" and "thus the question of sufficiency as it relates to the crime charged will be largely resolved by a determination of the question of admis-

sibility and competency as it relates to such other crimes." Under the circumstances, we prefer to consider the specified error, in order to eliminate any basis for an impression that we are sanctioning a verdict resting, as claimed by appellant, in substantial part on improper evidence.

It is elementary that evidence of other crimes committed by the accused is ordinarily not admissible. The general rule and the underlying reason for it are stated in *Territory* v. *Caminos,* 38 Haw. 628, 635, as follows: "The rule firmly established in policy, tradition, and law, is that evidence, the purpose of which is to prove that a defendant on trial for one crime has committed other separate and independent crimes, is inadmissible. The purpose of the rule is to forbid and prevent the conviction of an accused for one crime by the use of evidence that he has committed other crimes, wherefrom the inference may be drawn that because he had committed other crimes he was more liable to commit the crime for which he was indicted and tried." It is also fundamental that when there is a logical connection between the crime charged and another offense committed by the accused, the evidence of the other offense is admissible. " 'The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' " *People* v. *Peete,* 28 Cal. 2d 306, 315, 169 P. 2d 924, 929. While basically the test is one of relevancy, the cases and texts usually consider and treat the admissibility of evidence of other crimes in terms of exceptions to the broad rule of exclusion. *Williams* v. *State,* Fla., 110 So. 2d 654, 658; 1

Underhill, *Criminal Evidence* (5th ed.) § 209, p. 486.

There are several well recognized exceptions to and limitations upon the general rule excluding evidence of other crimes. 20 Am. Jur., *Evidence,* § 310, p. 289; 22 C.J.S. *Criminal Law* § 691, p. 1118. Two pertinent to the issue under consideration are: (1) That evidence of the defendant's commission of other crimes is admissible in aid of proof of the crime charged if the evidence tends to establish a common scheme, plan, or system, and (2) that such evidence is admissible if it tends to reflect the accused's state or bent of mind in connection with the crime charged. There is no lack of authority in this jurisdiction on the application and reach of these two exceptions. The following two quotations are illustrative.

"It is evident therefrom that the prior offenses have a logical connection to the crime charged in tending to establish the defendant's identity as the perpetrator of that crime and in throwing light upon his motive for being present in the bedroom of the prosecutrix at the time of its commission. Such being the probative effect, the testimony was admissible for the purposes of identification and of showing the plan, scheme, or bent of mind of the defendant as a part of the Territory's case in prosecuting him for the crime charged * * *, even though it also proved separate and distinct offenses, the admissibility thereof coming within the well-recognized exception to the general rule that prior offenses are inadmissible to prove a subsequent crime." *Territory* v. *Hamilton,* 39 Haw. 14, 17. (Citations omitted.)

" 'Whenever mental state, guilty knowledge, or scienter is an essential element of the offense charged, evidence is admissible of acts committed by the accused and his conduct at or about the time of the commission of the offense charged against him which tend to establish his knowledge or intent, his motive for the commission of

the crime, the absence of mistake or accident or of a common scheme, plan, or system on his part, notwithstanding such evidence proves or tends to prove an offense other than that charged.' 20 Am. Jur., *Evidence* § 313, pp. 293-295, and cases cited in footnotes therein." *Territory* v. *Caminos, supra,* at page 637.

Other cases upholding the admission of evidence of prior crimes to show intent or a common plan are *Territory* v. *Chong Pang Yet,* 27 Haw. 693, 695; *Territory* v. *Awana,* 28 Haw. 546, 547; *Territory* v. *Oneha,* 29 Haw. 150, 157; *Territory* v. *Alford,* 39 Haw. 460, 462.

"Common features indicating common design" is the requisite for admission of evidence of other crimes under the common plan exception. II Wigmore, *Evidence* (3d ed.) § 304, p. 204. As stated in *People* v. *Peete, supra,* at page 931: "When a defendant's conduct in connection with the previous crime bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design."

The roles played by the actors in the Mapunapuna burglaries and the Pacific Motors burglary were comparable. In each, the modus operandi was, to all appearances, identical. In each, defendant remained in the car, while his companions did the actual burglarizing. The existence of these common features sufficiently meets the required test to justify the admission of the evidence as tending to prove a common plan or design.

Appellant contends, however, that the Pacific Motors burglary can not be considered to have been the result of a common plan because it was an "on the spur of the moment" idea, undertaken after the Mapunapuna expedition had terminated, and that the testimony to that effect "completely breaks any causal connection that might

have otherwise existed between the Mapunapuna and Pacific Motors offenses." We have already indicated that we consider the contention to be without merit. However if further consideration of it is required, the holding in *Territory* v. *Abellana,* 38 Haw. 532, is applicable. It fully supports our conclusion that the point made by appellant is not well taken.

In the *Abellana* case the defendant was convicted of rape and robbery. The evidence showed that the defendant and an accomplice had obtained a .45 calibre automatic and were intending to proceed on a bus directly from midtown Honolulu to Waikiki. However, as they approached the bus stop they saw a couple standing on the sidewalk, and when defendant's accomplice stated "let's go in and hold them up," the two accosted the couple and forced them at gun's point into a nearby cemetery, where each raped the woman. They also robbed her and her escort. In the trial of the defendant for these offenses, evidence pertaining to a subsequent holdup, of a Miss Rodrigues in Waikiki, was admitted over objection. On appeal it was contended that the testimony of the crime committed in Waikiki was wholly independent and unconnected with the crimes charged, and was irrelevant and inadmissible in that it did not tend to establish the commission by the defendant of the crimes laid in the indictment. The court held the evidence admissible under the common plan exception, stating at page 539 of its opinion:

"Their admitted intention in proceeding to King street from Pacheco's home was to 'catch the bus.' Under the evidence, this predetermination lends to the inference and resulting conclusion that the crimes committed within the cemetery were of an intervening, extemporaneous, impromptu nature, and were in fact collaterally conceived and related to the principal purpose of boarding a bus

presumably for Waikiki. The intervening crimes committed within the cemetery were, however, converted into the primary crimes of a preconceived evening's undertaking of lawlessness employing the weapon and clip with four cartridges as a *modus operandi* in its development by preliminarily placing victims and potential victims in preludial fright or submission. These means, employed within a radius of two miles and within one hour each of the other, disclose a common plan, scheme and system embracing and collateral to the subsequent crimes testified to by the witness Rodrigues, thereby concentralizing them within the orbit of the evening's criminalisms. The Rodrigues testimony thus guides the subsequent acts, circumstances and crimes within the relevant scope of the issues framed under the indictments."

In addition to the admissibility of the evidence of the Mapunapuna burglaries under the common plan exception, reception of such evidence was justified under the exception allowing evidence of prior crimes which tend to show the motive and purpose of the accused's presence at the scene of the crime charged, or, as stated in *Territory* v. *Hamilton, supra,* to show his "bent of mind" in connection with the commission of the crime charged.

The proof of the corpus delicti of the burglary charged is unassailable and defendant's physical presence at the scene of it while it was being committed is undisputed. The only real issue open in the case was whether he was mentally present. The burden rested on the prosecution to prove that the defendant was aware of what was going on at the time of the commission of the burglary and that he willingly and knowingly participated in it. It was entitled to present in its case in chief any relevant evidence which tended to sustain its burden in that regard or to meet the anticipated defense on the point. Evidence

of the defendant's participation in the series of burglaries committed shortly before was clearly relevant to negative any accounting for the defendant's association with the actual perpetrators of the Pacific Motors burglary and his presence at the scene of its commission on an innocent basis. It had a direct bearing on his awareness that the crime was being committed and on his state or bent of mind in respect thereto. Its admission therefore can also be upheld, under the second exception, above set out, to the general rule excluding evidence of other crimes. "If the respondent, as claimed by him, remained with the team while Peter Le Clair and George Valwell were committing the burglary at Damon's, evidence showing his participation in the larceny committed shortly before that night at Houghton's was admissible upon the question whether he remained with the team with the intent and purpose, in so doing, to aid Le Clair and George Valwell in committing the burglary at Damon's. It tended to prove that the respondent was cognizant of the crime which was being committed at Damon's." *State* v. *Valwell*, 66 Vt. 558, 561, 29 Atl. 1018, 1019.

Appellant further attacks the evidence of the Mapunapuna burglaries on the ground that the proof thereof was insufficient to warrant its admission. He contends in effect: (1) that a defendant's guilt of other crimes must be proven beyond a reasonable doubt, and (2) that such proof can not rest on the uncorroborated testimony of an accomplice. Neither point is sustainable.

In support of the first contention, appellant cites as his principal authority *Baxter* v. *State*, 91 Ohio St. 167, 110 N.E. 456, from which is quoted: "Evidence that an accused was guilty of other similar offenses must be such that a jury would be authorized to find him guilty of these offenses." Such, however, is definitely not the rule in this jurisdiction. The point is covered and sufficiently

40

disposed of by the statement of this court in *Territory* v. *Awana,* 28 Haw. 546, 549, as follows:

"Defendant contends that the evidence adduced in support of other prior similar offenses did not of itself show beyond all reasonable doubt that the defendant was guilty of such offense and hence should not have been submitted to the jury. He cites in support of his contention *Baxter* v. *State,* 110 N.E. (Ohio) 456. This case, however, is not persuasive. We prefer the reasoning and the rule enunciated in *Commonwealth* v. *Robinson,* 16 N.E. (Mass.) 452, approved and followed in *State* v. *Hyde,* 136 S.W. (Mo.) 316, to the effect that the evidence of other crimes similar to that charged need only tend to prove the defendant guilty of such other crimes. The degree of proof required of the prosecution to entitle it to a conviction applies to the offense charged and every essential ingredient thereof. One of the essential ingredients of the embezzlement as charged was a fraudulent intent. Hence the fraudulent intent must be proved beyond all reasonable doubt. It does not follow that a collateral matter from which intent may be inferred must also be proved beyond all reasonable doubt. To require such a degree of certainty would be unreasonable and cast a burden upon the prosecution in excess of what the protection of persons accused of crime requires. As we shall hereafter more fully point out in connection with the exception to the verdict, the evidence tended to show similar embezzlements by this defendant within a short time prior to the embezzlement charged in the indictment. This evidence was competent and material and its admission was not error." See also *Territory* v. *Caminos, supra,* at page 641.

In connection with the contention that Kahalewai's testimony connecting the defendant with the Mapunapuna burglaries was inadmissible because it was not corroborated, it is to be noted that in referring to the admissibility

of the physical evidence received in the case, appellant states in his brief that Kahalewai's testimony concerning the so-called Mapunapuna burglaries "includes its corroborating evidence of the stolen burglary tools and watch." However, he attempts to preclude the use of this evidence by contending it was not admissible for that purpose because "they were not found in Defendant's personal or actual possession involving his distinct and conscious control." It is true that the mentioned articles were not found in defendant's personal or actual possession, but if it be assumed, for the purpose of argument, that personal or actual possession by the defendant of the fruits of the prior burglaries were a requisite to constitute corroboration, then clearly the testimony showing that the defendant was, at the time of his apprehension, practically sitting on the two bags of money stolen in Mapunapuna would be sufficient corroboration of Kahalewai's testimony of the prior burglaries.

On the proffered premise that a conviction based on the uncorroborated testimony of an accomplice may not be sustained, appellant further argues that the verdict in this case should be set aside for the reason that the State's evidence connecting the defendant with the crime charged also depended on the uncorroborated testimony of Kahalewai. The contention is patently unsound. The testimony of Brandt and Freeman, placing the defendant at the scene of the offense, at the hour and under the other circumstances shown, constitutes clear and sufficient corroboration of Kahalewai's testimony. "Proof that accused was at or near the scene of the crime at or about the time of its commission is admissible in corroboration of the testimony of the accomplice, and may tend to connect accused with the commission of the crime, so as to furnish sufficient corroboration to support a conviction when coupled with suspicious circumstances, such as unseason-

ableness of the hour, inclemency of the weather, lack of apparent reason for such presence, being in the company of the accomplice, as shown infra this section subdivision d (5), subsequent flight, or subsequent denial of such presence." 22 C.J.S. *Criminal Law* § 812, p. 1405. See also *Harper* v. *Commonwealth,* 211 Ky. 346, 348, 277 S.W. 457; *State* v. *Bolton,* 65 Mont. 74, 87, 212 P. 504, 508; *People* v. *Spivak,* 166 Cal. App. 2d 796, .........., 334 P. 2d 44, 51.

Moreover, as a matter of law, corroboration of Kahalewai's testimony, either generally or in regard to the Mapunapuna burglaries, was not necessary.

At common law, corroboration of an accomplice is not required. In some jurisdictions, generally by reason of statutory provisions, corroboration is required. 20 Am. Jur., *Evidence,* § 1235, p. 1087; 22 C.J.S. *Criminal Law* § 810, p. 1388. We have no general statute on the subject in this jurisdiction and therefore are governed by the common law rule.

In *Tong Kai* v. *Territory,* 15 Haw. 612, 616, it was ruled, "A conviction based upon the uncorroborated testimony of an accomplice is legal." Cited in support of the holding are: *The King* v. *Wo Saw,* 7 Haw. 734, and *Republic* v. *Edwards,* 11 Haw. 571. In the latter case the court stated, at page 575: "We sum up our views as follows: (1) The jury should be cautioned as to giving credit to the testimony of an accomplice. (2) The jury may be instructed that they may convict on the uncorroborated testimony of an accomplice. (3) It is, if the case warrants it, discretionary with the court to advise the jury not to convict on such testimony. We presume the court has the power to so advise in every proper case." Here, the jury was instructed that, as an accomplice, Kahalewai's testimony should be received "with great care and caution."

We find no merit in any of the contentions made by appellant in support of the second specification of error.

The third specification pertains to the admission in evidence of a pair of wire snips, a bunch of keys, and a watch, found together with a crowbar by the president of Pacific Motors, in the warehouse, when he opened it up on the morning of the burglary. The articles were turned over to the police, and, before admission in evidence, were identified by Kahalewai as having been stolen in the Mapunapuna burglaries and left in the Pacific Motors. They were admitted over objection that "There has been no tie-up between this defendant here and the instruments used by the accomplices."

The evidence was clearly admissible. The authorities cited by appellant precluding evidence of stolen goods unless found in the custody and control of the accused apply where the evidence is offered to directly connect the accused with the burglary and there are no circumstances connecting the accused with the possessor of the stolen goods. Where, as in this case, the accused is prosecuted as an aider and abettor, recent possession of the stolen goods by an accomplice is sufficient foundation for the admission of the evidence. 12 C.J.S. *Burglary* § 50, p. 723; 9 Am. Jur., *Burglary,* § 64, p. 272. However, aside from relevancy to the Mapunapuna burglaries, the evidence under consideration was admissible in support of the proof of the corpus delicti of the Pacific Motors burglary. The finding of the articles by the president of the company tended to establish entry, and the burglary tools (crowbar and snips) and the skeleton keys, to prove the burglarious nature of the entry. 12 C.J.S. *Burglary* § 51, p. 724.

We find no error in the admission of the evidence covered by the third specification of error.

In contending that the evidence was insufficient to

sustain the verdict, appellant urges our consideration of the affidavits of Kahalewai and Henry Nakahiki, referred to and discussed in *In re Carvelo, supra*. We think we made it abundantly clear in that decision that the affidavits may not properly be considered by this court, and, further, even if it were assumed *arguendo* we could take cognizance of them, that the affidavits were insufficient to warrant setting aside the verdict and granting a new trial. We adhere to that ruling on this appeal.

The assignments of error are overruled and the judgment is affirmed.

*Louis Le Baron* for defendant-plaintiff in error.

*John H. Peters,* Prosecuting Attorney, City and County of Honolulu, and *Mack H. Hamada,* Deputy Prosecuting Attorney, for the State, defendant in error.